### HELEN M. MIX *et al.*

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 25, 1886.*

1. STATE'S ATTORNEY—*suits in relation to the revenue—duty of that officer.* The law makes it the duty of the State's attorney to prosecute all actions and suits for the collection of the public revenue; and if he is absent, or unable to attend, or is interested in any cause or proceeding affecting the public interests, it is the duty of the court to appoint some competent attorney to·prosecute or defend such cause or proceeding.

2. TAXATION—*of the assessment—over-valuation—fraudulent assessment—remedy.* If property is fraudulently assessed at a greater value, in proportion, than other like property in the same district, the owner should have the assessment reviewed by the tribunal appointed by law for that purpose.

If he neglects to avail of his legal remedies, he can not contest the assessment and validity of the taxes on a bill by the State to enforce its lien against lands for such taxes.

3. Same—*presumption in favor of legality of assessment.* Where two or more lots are assessed jointly, and not separately, it will be presumed in favor of the acts of the assessor, in the absence of a contrary showing, that they were so situated that their value could not be ascertained separately, as, if one building had covered part of both lots.

4. Same—*refusal to assess property in owner's name—remedy, if injury results.* The refusal of the proper officers to assess lands and lots in the names of the several owners thereof, affords no ground of defence against proceedings to collect the taxes against such property. If the owner is injured by such refusal, the law will give him an adequate remedy against the officer.

5. Same—*by whom assessments must be made—and of an illegal re-assessment, and a compromise based thereon.* The law has designated a certain person to assess and fix a value upon property for taxation, and provided a township board of review, and no other person than the assessor can make such assessment. The board of supervisors have no power or authority of law to appoint a committee to re-assess a party's lands for the purposes of taxation, and compromise with the tax-payer in regard to the State and county taxes, and their action to that end, when set aside on *certiorari,* affords no defence to a proceeding to collect the taxes.

6. Where the board of supervisors, though without authority, appointed a committee to re-assess a party's lands, which was done by a reduction of the valuation, and by way of compromise with the board the owner paid the taxes on the basis of the new assessment, it was *held,* that while such re-assessment and compromise were void, yet on bill to foreclose the lien for the taxes, the payment so made should be deducted from the taxes extended against the property.

7. Foreclosure *of tax lien—sufficiency of the bill—as to the taxes of different years embraced therein.* A bill to foreclose the lien against land for the taxes, etc., of several years, after setting out the taxes of the years 1878 and 1879, and the forfeiture of the same for those taxes, etc., charged as follows: "That the full amount now due upon said lands and lots, as shown upon said collector's books of the year 1880, for taxes, penalties, interest and costs, including said forfeitures for the years 1878 and 1879, and accrued taxes for the year 1880, is the sum of $3687.40, and the amount which was and is a lien upon each tract and lot separately, is shown by said books and said copy attached, opposite to each tract and lot, separately and respectively," and prayed "that the said tax lien" might be foreclosed: *Held,* that these allegations were clearly sufficient to entitle the complainant to a foreclosure, not only for the taxes and forfeitures incurred for the year 1879 and previous years, but also for the taxes shown by the collector's books to be due for the year 1880.

8. SAME—*of defective description of lands—and correction thereof.* In a proceeding under the statute to foreclose the lien upon land for taxes due and unpaid thereon, the description of the lands and lots must necessarily be the same as set forth in the assessment list and judgment, and a bill to correct it, when defective, will not probably lie.

9. SAME—*defective description of a portion of the lands—validity of decree as to the residue.* A decree of foreclosure for taxes against several tracts for the taxes, etc., due upon each, is and should be several as to each tract, and if the description as to one or more of them is void for uncertainty, that will not render the decree erroneous, and vitiate the sale as to the other tracts.

10. SAME—*decree giving time for payment.* The decree of foreclosure of a tax lien against several tracts or lots of land, after finding the sum due and unpaid upon each parcel, should fix a short time within which the amount so found due should be paid, so that the parties interested may pay upon all or any of the tracts, and, as to such, avoid a sale.

11. SAME—*where some are not made parties—effect upon decree as to such as are parties.* The fact that all persons having an interest in lands against which the lien of the State for taxes due thereon is sought to be foreclosed, are not made parties, will not prevent a decree as to the interest of one made a party. The only effect of not making them parties is that they will not be bound, or their interest in the property be affected thereby.

12. FORMER ADJUDICATION—*as to matters that might have been presented, but were not.* Where a land owner appears and resists an application for judgment in the county court against his land for taxes, and his objections are overruled and judgment rendered against the lands for the taxes, such judgment, while unreversed, is conclusive upon the owner and his land, not only as to the matters actually decided by the county court, but also as to all questions and objections that might have been raised against its rendition, no matter how erroneous the judgment may be.

13. CHANCERY—*exceptions to the answer—in what manner to be taken.* Exceptions to answers for immateriality, irrelevancy, and on account of scandalous matter contained in them, should set forth the parts of the answer excepted to. It is not proper to refer to the parts excepted to, by the page and line, as such paging can not well be preserved in making up the transcript of the record.

14. SAME—*to what the exceptions may relate—when answer not under oath.* Where the answer is not required to be under oath, exceptions can only be taken to such matters therein as are irrelevant, impertinent or scandalous.

15. SAME—*answer when taken as true.* Where exceptions to an answer are sustained, the answer is not to be taken as true on the hearing, if replication is filed. It is only when the exceptions are disallowed, and the complainant abides them, that the answer will be taken as true.

16. SAME—*dismissal of suit for want of authority to bring it.* Where a bill was filed in the name of the People of the State of Illinois, by an attorney at law occupying no official position, to foreclose a lien upon certain lands for taxes due thereon, and the defendants sought to ·question the authority of counsel to bring the suit, first by demurrer, and then by answer, and nearly two years after the filing of the bill, entered their motion to dismiss the suit for want of such authority, it was *held,* that the motion was properly overruled after such lapse of time.

17. SAME—*reference to master to find taxes due—on bill to foreclose tax lien.* On bill to foreclose the lien of the State for taxes due upon several tracts of land and lots, on which a certain amount of taxes have been paid, the court may properly refer the case to the master to ascertain and report the amount remaining unpaid on each tract, including costs, and the approval of such report will be a sufficient finding by the court as to such amounts.

18. SAME—*receiving incompetent evidence in chancery—as a ground of objection—presumption.* In chancery, the admission of incompetent evidence on the hearing is not cause for reversal, provided there is sufficient competent evidence in the record to sustain the decree, it being presumed that the court, in such case, acts only upon the evidence competent and relevant to the issue.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. O. T. REEVES, Judge, presiding.

This is a bill in chancery to foreclose a lien against certain lands and town lots in Kankakee county, for taxes thereon, under section 253 of the Revenue act of 1872, which reads as follows:

"Taxes upon real property, together with all penalties, interest and costs that may accrue thereon, shall be a prior first lien on such real property, superior to all other liens and incumbrances, from and including the first day of May, in the year in which the taxes are levied, until the same are paid, which lien may be foreclosed in equity in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever taxes for two or more years upon the same description of property shall have been forfeited to the State, and may be sold under the order of the court by the person having authority to receive State and county taxes, with the

same notice to interested parties, and right of redemption from sale, as is now provided by law, and in conformity with sections four (4) and five (5), of article 9, of the constitution of this State. In proceedings to foreclose the tax lien on any real property, the amount due on the collector's books against the property shall be *prima facie* evidence of the amount of taxes against the real property. When any taxes are collected in any such foreclosure proceedings, they shall be paid to the county collector, to be distributed by him to the respective authorities entitled thereto."

The bill was filed on the 11th day of March, 1882, in the name of the People of the State of Illinois, as complainants, and is signed by C. R. Starr as solicitor for complainants. James Mix, in whose name the lands and lots are assessed, and who is stated to be the owner or to claim some interest therein, was made defendant to the original bill, and summons was issued and served on him, returnable to the April term, 1882. Duly certified copies of the collector's books for the towns of Momence and Ganeer, in which the premises are situated, are attached to and made a part of the bill.

It is stated in the bill that these "lands and lots were forfeited to the State of Illinois for the taxes of the year A. D. 1878, and for the year A. D. 1879; that the amount of taxes, penalties, interest and costs dues on said lands and lots for the year 1878, was the sum of $1468.90; and the amount of taxes, penalties, interest and costs on said lands and lots forfeited to the State for the year 1879 was the sum of $1220.34, and the full amount now due upon said lands and lots, as shown upon the collector's books for the year A. D. 1880, for the taxes, penalties, interest and costs, including said forfeitures for the years 1878 and 1879, and accrued taxes for the year A. D. 1880, is the sum of $3687.40, and the amount which was and is a lien upon each tract and lot separately, is shown by said books, and said copy attached, opposite to each tract and lot separately." The oath to the

answer is waived. A foreclosure is asked for the amount shown to be due against the property.

No steps were taken at the April term, although Mix was served with process more than ten days before the commencement of the term. At the September term, A. D. 1882, Mix filed a demurrer to the bill, which was sustained, and leave given to complainants to amend their bill, which they did on the same day, setting forth that the title to the property was then in one Helen Mix, subject to the lien, and that George V. Huling had or claimed to have some interest in the lands, and asks that they may be made parties, and compelled to answer, but waives their oath to the same. On the 14th of November, 1882, all three of the defendants, the two Mixes and Huling, filed their answers, to which exceptions were sustained, and on the 3d of March, 1883, they filed another answer, which, besides denying the material allegations of the bill, denies the right to maintain the bill for want of jurisdiction; avers the county had not authorized the suit to be brought, and refused to authorize complainants' counsel to bring it; says the assessor and county clerk willfully and corruptly assessed the property in the name of James Mix, when they knew certain of it belonged to Manning Leonard and certain of it to H. Church Todd, trustee for Helen M. Mix, and that the forfeitures are void by reason thereof; that the land was fraudulently assessed too high; that some of the tax was levied to pay bonds issued without authority of law; that the county court had no jurisdiction over the persons of the owners of the property, or the subject matter of the application for judgment for the taxes of 1878 and 1879; that all of the several taxes for those years are void; that the tax collectors of said towns did not make out proper lists of the real estate, nor make affidavit of their correctness; that the intended application for judgment was not published for three weeks prior to the term of the county court to which application was made for judgment; that Manning Leonard

and H. C. Todd are owners of the premises, and are necessary parties; that the assessor assessed this property higher than other property in the same neighborhood of like value, and that Manning Leonard and H. C. Todd had no notice of such assessments; that Leonard and Mrs. Mix applied to the board of supervisors of the county for relief from these assessments, and they appointed a committee to re-assess the property, and agreed with the owners that upon their paying the taxes in accordance with the value as thus re-assessed, to accept the same in full, and that they accepted this proposition and paid the taxes upon the valuation as thus fixed, which was greatly below the valuation placed on the property by the regular assessors; that neither the board of supervisors nor the State of Illinois, nor the towns of Momence or Ganeer, nor any other municipality authorized to collect the taxes sought to be enforced, have authorized the commencement of this suit; that much of the property is assessed at more than it is worth, and avers that the tax records show these land were not forfeited to the State for those years, but on the contrary show they were all paid and discharged.

Exceptions were sustained to a portion of the amended answer, and on the 10th of April, 1883, a replication was filed and the cause referred to the master, who reported that defendants had taken no proof, "though a good opportunity had been offered them." On the 14th of January, 1884, defendants moved to dismiss the suit for want of authority on the part of C. R. Starr to bring the same, which motion was overruled. The cause was heard on the 16th of January, 1884, and a final decree rendered as of April 17th thereafter, foreclosing the lien, and Helen Mix and James Mix bring the case to this court on writ of error.

Mr. Stephen R. Moore, and Mr. William Potter, for the plaintiffs in error.

Mr. C. R. Starr, for the defendants in error.

Mr. Justice Tunnicliff delivered the opinion of the Court:

Various exceptions were taken to the answers in this case, for immateriality, irrelevancy, and on account of scandalous matter contained in them; but the exceptions do not, as they should do, set forth the parts of the answers excepted to. It is referred to only as set forth on certain specified pages and lines of the answers, and as their paging has not been, by the circuit clerk, preserved in the record, we are unable to say, therefore, whether the exceptions were properly sustained or not.

The plaintiffs in error sought, first by demurrer, and afterwards by their answers, to question the authority of complainants' counsel to bring this suit. Failing to accomplish their purpose, and after the suit had been pending for nearly two years, they then make their motion to dismiss for the want of such authority. The court very properly overruled this motion. It was of a dilatory character, and should have been made at the first opportunity, and it could not be properly raised by demurrer or answer. Counsel for plaintiffs in error have presented no authorities upon the subject, or referred us to any statute bearing upon it, and we know of none, except that by part second of section 5, chapter 14, of the Revised Statutes, it is made the duty of the State's attorney to prosecute "all forfeited bonds and recognizances, and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State, or his county, or to any school or road district in his county;" and by section 5 it is made the duty of the court, whenever he is absent or unable to attend, or is interested in any cause or proceeding, civil or criminal, to appoint some competent attorney to prosecute or defend such cause or proceeding. It is said, and so appears from the record, that the State's attorney had been employed by some of the parties interested, before this litigation arose, regarding one of

the questions involved in this case, and had this motion been made in apt time, the court would have doubtless appointed complainants' solicitor, or some other competent attorney, to prosecute this suit. The collection of the public revenues is of the utmost importance, and no court should allow a suit of this character to be dismissed because the solicitor who brings it may not happen to be the State's attorney or the Attorney General, without good cause shown therefor. There is no statute requiring a bill of this kind to be signed in the official character of either of those officers, as there is with reference to an indictment.

Complaint is made that these lands and lots were fraudulently assessed at a far greater value in proportion than other lands and lots in the same assessment district. Even if this is so, this objection can not be raised in this proceeding. The law has designated a certain person to assess and fix a value upon property for purposes of taxation, and given a remedy to parties aggrieved by his action, to have the same reviewed. If parties neglect this opportunity, they at least can not contest the matter in a suit like this, brought to enforce the lien given by the statute against the lands for the non-payment of the taxes. The action of the board of supervisors in appointing a committee to re-assess these lands for the purposes of taxation, and their compromise with plaintiffs in error regarding the State and county taxes, was clearly unauthorized; but whether so or not, their proceeding in regard thereto has been reversed and set aside by a court of competent jurisdiction on writ of *certiorari,* which is binding upon every one so long as it remains in full force, and plaintiffs in error can not therefore invoke the action of the supervisors as a defence here; but so far as they have paid to the proper collecting officers any taxes, penalties or costs, under said arrangement with the supervisors, they are entitled to a credit therefor in this proceeding.

18—116 Ill.

Counsel for plaintiffs in error are wrong in supposing that when exceptions to an answer are *sustained,* therefore the answer is taken as true. The case of *Prettyman* v. *Barnard,* 37 Ill. 105, does not announce such a rule, but holds only that where the exceptions are disallowed, and counsel elects to abide by them, and files no replication, then the answer will be taken as true. In this case an answer under oath was waived, and exceptions could therefore be taken only to such matters therein as should be regarded as irrelevant, impertinent or scandalous, and it would be a very strange doctrine to hold that because exceptions were taken and sustained to such matter, therefore the rest of the answer must be taken as true, even though, as was done in this case, a replication was filed.

Nor was there any error in the court refusing, as is claimed, to pass upon the competency of evidence, as it was offered for its consideration. The court stated, at the time of the offer, that it would be admitted subject to the objection, and such weight given to it as the court might think it was entitled to. It is familiar law, in chancery practice, that the admission of incompetent evidence on the hearing is not cause for reversal, provided there is sufficient competent evidence in the record to sustain the decree, the reason being that the court is supposed to have disregarded all evidence in the case except that which is competent and relevant to the issue.

It is also claimed that among the various taxes extended against these lands, is one for the payment of certain bonds which it is alleged are void, and were fraudulently issued. This objection can not prevail. The appellants appeared in the county court and resisted the application for judgment, and should have made their objection to that court. Having personally appeared, and there raised all objections they saw proper to the obtaining of the judgment, and failing to appeal or prosecute a writ of error therefrom, it becomes conclusive

upon them as to all questions or objections that were or could have been raised against its rendition.

The cases cited by counsel for plaintiffs in error to show that a judgment rendered against land for various taxes, a portion of which is illegal, is for that reason void, does not apply to a case where the party raising the objection was personally before the court rendering the judgment. The court then having jurisdiction over the person and the subject matter, its judgment, until reversed or set aside, is conclusive upon the parties, no matter what errors may have been committed by the court in the rendition of such judgment. *Graceland Cemetery Co.* v. *The People*, 92 Ill. 619.

The allegations in the bill, we think, are clearly sufficient to entitle defendants in error to a foreclosure, not only for the taxes and forfeitures incurred for the year 1879 and previous years, but also for the taxes shown by the collector's books to be due for the year 1880. The law makes the collector's books *prima facie* evidence of the taxes due against the land, and the allegation in the bill is, that "the full amount now due upon said lands and lots, as shown upon said collector's books of the year A. D. 1880, for taxes, penalties, interest and costs, including said forfeitures for the years 1878 and 1879, and accrued taxes for the year A. D. 1880, is the sum of $3687.40, and the amount *which was and is a lien upon each tract and lot* separately, is shown by said books, and said copy attached, opposite to each tract and lot, separately and respectively," and the bill prays *that the said tax lien* may be foreclosed, etc. This objection was raised at the hearing, and out of abundant caution the counsel for complainants asked leave to amend the bill in that respect, to make the allegation correspond with the proof, but the court refused to allow the amendment to be made. As we think the allegation was already sufficient, there was no error in the refusal; but had it been otherwise, the court should have allowed the amendment to be made.

There is error, however, in this decree, for which it will have to be reversed. The decree was for the full amount of taxes, penalties and costs, without allowing plaintiffs in error anything for large sums of money they had paid on these taxes, to the proper officers, under the alleged compromise with the board of supervisors. It was the duty of the court to allow a credit on each tract of land for whatever had been paid thereon, and to have ascertained and found by the decree the amount due upon each tract, and the court, in our opinion, erred in requiring, as it seems by the decree to have done, as a condition to such allowance, that the party interested should pay the balance due. That part of the decree with reference to allowing these credits, is as follows: "If the said defendants or parties interested in said lands and lots shall pay the taxes, interest and penalties and costs for which the same are ordered to be sold, to said collector before said lands are sold, with costs of suit, *then the said collector shall allow as a credit all sums paid to said collector heretofore* on account of said taxes, if any such have been paid to him." To ascertain and fix the amount due on each tract, the court can refer the case to the master to determine, and report to the court the amount remaining unpaid on each tract, including costs, and the approval of such report by the court would be a sufficient finding by the court as to such amounts. The decree should also fix a short time within which the amount found due should be paid, so that parties interested may pay upon all or any of the tracts, and as to such, avoid the sale.

It is objected that some of the lots were assessed jointly, and not separately, as required by the statute. The presumption should be indulged in favor of the proceedings of the assessor, that the lots were so situated that their value could not be ascertained separately, as, if one building had covered part of both. But in this particular case plaintiffs in error can not raise that objection here, as they appeared and de-

fended against the judgment. The decree should follow the judgment in that respect, and for the purpose of sale or payment of the taxes, penalties, etc., property thus assessed should be treated as one lot.

It is said the court below erred in rendering judgment against James Mix for costs. We have examined the decree and are unable to find anything said about the costs of this suit. The costs mentioned in the decree are to be made by a sale of the land, unless parties interested shall see proper to pay it with the taxes, penalties, etc., and thus avoid a sale. This is in no sense a judgment against Mix or anybody else, but is against the land. There is no question before us as to the costs of this suit.

It is assigned for cross-error that the court erred in refusing to render a decree for the payment of the State and county taxes, and in dismissing the bill as to them, and all penalties and forfeitures connected therewith. We are of opinion that this assignment of error should be sustained. As we have before said, the proceedings before the board of supervisors in attempting to re-assess these lands and lots and compromise with plaintiffs in error concerning these taxes, was not only unauthorized, but even if it was, the same has been set aside on *certiorari,* and for the purposes of this case are to be treated as if they had never taken place, except that such of the parties as have paid any taxes on these lands or lots under said agreement, are entitled to a credit therefor.

It is urged that the land was not assessed in the names of the true owners, and that the county clerk and assessor, though requested to assess the same, refused to do so. We do not see that that is any reason why the owner should not pay the taxes, or why judgment may not be rendered against the land therefor, or the lien created for the same should not be foreclosed. If plaintiffs in error have been injured by the willful and fraudulent misconduct of the clerk or assessor, the law will probably afford them an adequate remedy. Such con-

duct is not a defence to this proceeding. It is said others have an interest in these lands and lots who should be made parties to the suit. If there are any such persons, they, not being made parties, will not be bound by the decree in this case, nor will their interest in the property be affected thereby. But that ought not, so far as we can see, prevent the fore-closure as to the interest of the defendants.

It is also urged, that as to some of the lands or lots the description is so defective that the same can not be located. As to the tracts to which this objection is made, it is replied by counsel for defendants in error that no foreclosure was taken. As the record is voluminous, and the case reversed upon other grounds, we have not taken the pains to make the necessary comparison to ascertain whether this is correct or not. The decree being several as to each tract, if, as to some, the de-scription is void for uncertainty, that would not vitiate the sale or render the decree erroneous as to the other tracts. In this peculiar statutory proceeding the description must neces-sarily be as set forth in the assessment list and judgment, and a bill to correct it, where it is defective or erroneous, could not, probably, be maintained. We have held, in a direct proceeding for· judgment against lands .for taxes, that there could be no lien, and consequently no judgment, unless they are described so that they can be located and found. (*San-ford* v. *The People,* 102 Ill. 374; *People* v. *Chicago and Alton Railroad Co.* 96 id. 369.) Whether a party who has personally appeared and objected to the rendition of the judgment, but not on these grounds, can be heard to say that no decree shall be rendered for a sale of the land because of this faulty description, we will not at this time decide. If the descrip-tion is void for uncertainty, it can not harm the real owner by selling, and yet there might be parties willing, at the fore-closure sale, to purchase the property for the amount of the taxes, penalties and costs, and run the risk of the sufficiency of the description. In this way the revenue might be col-

lected, and we ought not unnecessarily to throw obstacles in the way. While the courts may not be able, in this class of cases, to correct a bad description, it will be time enough to hold it bad when they are obliged to do so. Should counsel for complainants below desire, the court should give them leave to dismiss their bill as to any tracts of land or lots the description of which they are satisfied is void for uncertainty.

There are other minor objections raised by counsel for plaintiffs in error, but none of them are of such a character as would require a reversal of the decree below. Injustice may have been done the plaintiffs in error by too high an assessment of their property, and from the action of the board of supervisors it would seem that such was the case; but we are powerless to remedy the wrong that may have been done them in this respect.

The decree of the court below is reversed, with directions to that court to ascertain and fix the amount due against each tract of land to be embraced in the decree of foreclosure, and to render such decree in conformity with this opinion.

*Decree reversed.*